[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13379
_____

D.C. Docket No. 2:13-cv-00267-RWS


DARRELL ALSOBROOK,
MICHAEL KIRKLAND,

Plaintiffs-Appellants,

LUCAS BURK, et al.,

Plaintiffs,

versus

FANNIN COUNTY, GEORGIA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 28, 2017)

Before JULIE CARNES and FAY, Circuit Judges, and GOLDBERG,[*] Judge.

PER CURIAM:

Darrell Alsobrook and Michael Kirkland were fired from the Fannin County Road Department.  At the time of their terminations, Alsobrook was 52 years old and Kirkland was 47.  Because they believe that they were fired based on their age, they sued the County asserting claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634.  The County filed a motion for summary judgment, and the district court granted it.  This is Alsobrook and Kirkland's appeal.

I.

William Simonds was sworn in as the Chairman of Fannin County's Board of Commissioners on January 1, 2009.[1]  In October 2011 the County's financial director approached Simonds with concerns about the County's budget and suggested that Simonds take some cost-saving measures.  Simonds believed the director's budgetary concerns were valid and instructed Charlie Collins, the Road Department's Superintendent, to cut costs in that department.  Collins understood that instruction to mean that Simonds wanted to fire some Road Department

---

[*]  The Honorable Ricard W. Goldberg, of the United States Court of International Trade, sitting by designation.

[1]  "At summary judgment we view the facts in the light most favorable to the nonmoving party." *Crawford v. Carroll*, 529 F.3d 961, 964 n.1 (11th Cir. 2008).  We recount the facts in that light, drawing from the "evidentiary materials on file." *Id.*

employees and was asking him to come up with a list of employees who could be terminated.

Collins created a list of employees who could be terminated based on whether (1) the employee did what Collins considered "seasonal work," (2) the employee had a soil and erosion certification, (3) the employee performed multiple jobs within the department, and (4) the employee volunteered to be on a list of people willing to respond to after-hours emergencies.[2]  Collins also consulted with the shop foreman, who "pretty much agreed" with the names on the list and did not suggest adding any additional names to it.  The final list named eleven employees, including Alsobrook and Kirkland.  While Simonds had initially asked the Road Department's shop foreman if any employees were about to retire,[3] Simonds testified that, upon receiving the list, he deferred to Collins' judgment and fired all eleven employees on it.

## II.

Under the ADEA it is "unlawful for an employer . . . to fail or refuse to hire to or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

---

[2]  Alsobrook and Kirkland point to Collins' testimony that he did not compare employees' qualifications when deciding whose names to put on the list, asserting that it raises a genuine issue of material fact as to the falsity of Collins' testimony that he considered those four factors in deciding the names to put on the list.  That quote, however, is taken out of context and does not raise a genuine issue of material fact as to Collins' reasons for putting their names on the list.

[3]  The foreman named a few employees, but he did not bring up Alsobrook or Kirkland.

3

because of such individual's age." 29 U.S.C. § 623(a)(1). In a case such as this one where disparate treatment has been alleged, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

When an ADEA claim is based on circumstantial evidence of age discrimination, this Court uses the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). Under that framework, the plaintiff must make out a *prima facie* case of discrimination. *Id.* When the case involves a reduction in force, the plaintiff establishes that *prima facie* case by showing (1) that he was within a protected age group and was "adversely affected by an employment decision"; (2) that he "was qualified for [the] current position or to assume another position at the time of discharge"; and (3) that there was "evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision." *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003) (quotation omitted).

If the plaintiff establishes a *prima facie* case, the defendant employer "must articulate a legitimate, nondiscriminatory reason for the challenged employment action," but its burden is "merely one of production." *Chapman*, 229 F.3d at 1024.

4

If the defendant meets that burden, the plaintiff must "proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual." *Id.* at 1024–25.  In other words, the plaintiff must offer evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* at 1024 (quotation omitted).

Assuming that Alsobrook and Kirkland offered evidence establishing a *prima facie* case, the County has met its burden of producing a legitimate nondiscriminatory reason for firing them.  Because of budgetary concerns, Simonds believed that a reduction in force was needed.  And Collins testified that he put Kirkland's name on the list because he believed that Kirkland drove only the spreader truck (making him less versatile than other workers) and had never offered to do emergency after-hours work.  Collins also testified that he put Alsobrook's name on the list because he believed that Alsobrook had never volunteered to be on the emergency after-hours list.

Alsobrook and Kirkland contend that those reasons were pretextual.  They point to evidence showing that (1) a reduction in force was not necessary based on the County's budget at the time; (2) Kirkland was licensed to drive more than the spreader truck, though he drove only that truck in the years before he was fired; (3) Kirkland had put his name on a "winter weather" list but had not been called to

5

work an emergency since the early 2000s; and (4) Alsobrook assumed that someone would call him if an after-hours emergency arose.  While it may be true that Simonds and Collins were mistaken about the facts they relied on to fire Alsobrook and Kirkland, "[a] plaintiff trying to show pretext . . . does not succeed by presenting evidence that the defendant was mistaken about the facts upon which he based his alleged non-discriminatory decision." *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265 (11th Cir. 2002).

Instead, Alsobrook and Kirkland must offer evidence showing that Simonds and Collins "did not honestly believe the facts upon which [they] allegedly based [the] non-discriminatory decision." *Id.*  They have failed to offer any evidence from which a reasonable jury could infer that Simonds did not honestly believe a reduction in force was necessary or that Collins did not honestly believe his reasons for putting their names on the list.

Alsobrook and Kirkland also offer as evidence of pretext comments that Simonds and the shop foreman made about why some other employees were fired in the reduction in force.  In the month before the firings Simonds told a 71-year-old employee that he should consider retiring because of his age and health, and the shop foreman had repeatedly asked that employee (as well as another employee) when he was retiring.  And after the reduction in force the shop foreman told someone that the 71-year-old employee was fired because he "was in bad

6

health and too old to work." Further, Simonds later explained that a 61-year-old employee had been included in the firings because that employee was "fixing to retire." And on the day of the layoffs, the shop foreman said that the County was firing the employees who were old enough to retire.

Alsobrook and Kirkland contend that those comments are relevant to show that Simonds and the shop foreman (to the extent the shop foreman had any say in who was fired) took their age into account when deciding to terminate them. Those comments may show that Simonds and the shop foreman intended to discriminate on the basis of retirement age, but neither Alsobrook nor Kirkland were close to reaching the retirement age, which was 65, or 62 for those taking early retirement. And Simonds' comment that the 71-year-old employee was fired because he was too old to work is not relevant to show that Simonds fired Alsobrook, who was 52, and Kirkland, who was 47, based on their age. As a result, those comments were not relevant evidence of an intent to discriminate against Alsobrook and Kirkland.[4]

---

[4] They also contend that the district court erroneously rejected statistical evidence of average age calculations before and after the reduction in force, which they offered at summary judgment within their statement of facts. The district court did not err in rejecting those calculations because "such calculations must come from a witness, not a party's lawyer." *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1315 n.16 (11th Cir. 1998). And even if we were to consider these averages, they are "virtually meaningless" and do not establish pretext because they lack any form of "analytical foundation." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (quotation omitted). Plaintiffs' averages did not control for any particular job category or work that the employees could perform, did not control for which employees held an "erosion certificate," did not explain the statistical significance of any median age

7

Alsobrook and Kirkland also point to Alsobrook's testimony he overheard Simonds say, at some point after he had been sworn in as the Chairman of the Board of Commissioners, that he wanted to "get rid of" workers who were about to vest in their retirement plan. The only evidence of when a County employee vests into the retirement plan is Alsobrook's testimony that vesting occurred after five years of service. But "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Hazen Paper Co.*, 507 U.S. at 611.

And while "[p]ension status may be a proxy for age . . . in the sense that the employer may suppose a correlation between the two factors and act accordingly," *id.* at 613, Simonds' statement about vesting, without any indication that he believed that vesting was correlated with age, is not evidence that the reasons given for their termination were pretextual, *see id.* at 613 ("[A]n employer does not violate the ADEA just by interfering with an older employee's pension benefits that would have vested by virtue of the employee's years of service.").

Alsobrook and Kirkland also assert as evidence of pretext the County's failure to follow its reduction in force policy, which stated that "employees shall be

---

reduction, and did not explain how Plaintiffs' particular terminations fit into this statistical evidence. At 47 (Kirkland) and 52 (Alsobrook) years old, Kirkland was below the average age of remaining employees (48.73) after the terminations, and both Plaintiffs were below the average age of terminated employees (59.54).

8

laid off and rehired on the basis of performance and need with the county."  In the year following the reduction in force, the County hired twelve employees, including rehiring Alsobrook as a truck driver.  Alsobrook and Kirkland contend that the County failed to follow its own reduction in force policy because it offered no evidence that the newly hired workers were more qualified than Kirkland.  The burden however, is on the plaintiffs, not the County, to demonstrate that the newly hired workers were less qualified than Kirkland.  Without some supporting evidence, their assertion that the County deviated from its policy does not raise a genuine issue of material fact as to pretext.

Because "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the [only way] for a plaintiff to survive a summary judgment motion in an employment discrimination case," the plaintiff can also overcome summary judgment by "present[ing] 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'"  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quoting *Silverman v. Bd. of Educ.*, 937 F.3d 729, 734 (7th Cir. 2011) (footnote omitted)).  For the same reasons Alsobrook and Kirkland failed to offer evidence establishing pretext under the burden shifting framework, they have also failed to establish a "convincing mosaic" of circumstantial evidence from

which the jury could infer discrimination.  The district court did not err in granting summary judgment to the County.

**AFFIRMED**.